UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RONN COLLINGTON, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | 2:08-cr-00053-DBH |
| | ) | 2:10-cv-00225-DBH |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Ronn Collington has filed a 28 U.S.C. § 2255 motion challenging his conviction for conspiracy to distribute and possess with intent to distribute controlled substances, including 500 grams or more of cocaine. In his § 2255 motion Collington presents four grounds: one, that the prosecutor, Assistant United States Attorney Daniel Perry, breached a plea agreement when he insisted minutes before sentencing that Collington would breach his part of this agreement if he challenged his career offender status at sentencing; two, the prosecutor breached the plea agreement when the prosecutor recommended only a 30% reduction and that there was insufficient cooperation to warrant a 40% reduction as argued by the defense; three, ineffective assistance of counsel; and, four, prosecutorial misconduct. As explained below, the essence of Collington's § 2255 claim as it now is distilled is the fourth § 2255 ground and relates to his argument that despite his post-sentencing cooperation the United States did not fulfill its obligation to move for a Federal Rule of Criminal Procedure 35(b) reduction of sentence.

I describe the procedural history of this case in greater length below. Following a series of communications with the court Collington was appointed counsel, Attorney James Clifford, for this § 2255 proceeding and I convened an evidentiary hearing on January 6, 2011.

After conferring with appointed § 2255 counsel, Collington has withdrawn his ineffective assistance challenge and presses here only his breach of plea agreement theory, clarifying: "The thrust of Mr. Collington's motion is that the Government wrongfully withdrew and/or refused to file a motion to reduce the sentence pursuant to Rule 35." (Doc. No. 116.) I make the following proposed findings of fact and recommend that the Court deny Collington 28 U.S.C. § 2255 relief because on these facts he has failed to demonstrate that the United States infringed a constitutional right when it refused to file the Rule 35 motion for further reduction.

## Discussion

### Procedural History

The Court's criminal judgment entered against Collington on July 30, 2009. (Doc. No. 94.) Collington filed a notice of appeal on August 12, 2009. (Doc. No. 95.) On October 29, 2009, the First Circuit Court of Appeals entered judgment on Collington's voluntary dismissal of his appeal. (Doc. No. 98.) On June 1, 2010, this Court received a letter from Collington that appears on this docket at Doc. No. 101 and is sealed, although the docket entry itself has been unsealed by the Court.[1] This Court convened a conference of counsel to address the issues raised by the letter and attachments on June 4, 2010. (See Doc. Nos.103, 111.) The sentencing judge granted Collington's request for a transcript of his proceeding (Doc. No. 105) and reserved ruling on Collington's attorney's motion to withdraw indicating that Attorney Andrews was to contact Collington and advised Collington to send a letter to the court indicating whether or not Collington agreed with the withdrawal (Doc. No. 107).

This 28 U.S.C. § 2255 motion was filed on June 10, 2010. (Doc. No. 109.) On July 16, 2010, the clerk's office received a letter from Collington indicating that he did not object to the

---

[1] It appears from the transcript of the June 4, 2010, conference of counsel that the concern vis-à-vis continuing the sealing stemmed from the fact that Frederick Gates had not yet been sentenced. See United States v. Gates, 2:08-cr-00042-DBH. Gates was sentenced on September 21, 2010. (Id. Doc. No. 319.)

2

withdrawal of Attorney Andrews but requesting appointment of new counsel. (Doc. 113.) This request was granted on July 16, 2010. (Doc. Nos. 114 & 115.) The United States filed four motions to extend time to file an answer (Doc. Nos. 117, 119, 123, 127), the last one being over Collington's objection (see Doc. 128). The United States filed its answer on December 1, 2010, (Doc. No. 131) and Collington filed a reply on January 3, 2011, (Doc. No. 136).

## Proposed Factual Findings

On January 6, 2011, I held an evidentiary hearing. The evidentiary record upon which these proposed factual findings are based is the affidavit of Collington's Criminal Justice Act counsel, Robert Andrews (Doc. No. 137), the affidavit of the assistant United States Attorney, Daniel Perry (Doc. 138), and the testimony of petitioner, Ronn Collington. I find that the Andrews and Perry affidavits are consistent with each other and with the testimony of Collington.

The written plea agreement between the parties was signed on April 21, 2008, and that plea agreement provided no additional promises would be entered into unless those additional understandings or conditions were in writing and signed by all the parties. (Plea Agreement ¶ 13, Doc. No. 33.) Collington, based upon his own testimony, understood that the plea agreement required him to cooperate with the attorneys and agents of the United States in the investigation of violations of federal and state laws. He understood that if he cooperated forthrightly, the United States would move for a Section 5K1.1 downward departure. Between April 21 and July 29, Collington cooperated with federal agents and the assistant United States attorney prosecuting the case by meeting with them on a couple of occasions and disclosing information concerning the drug conspiracy.

On July 29, 2009, Collington was sentenced. Prior to the sentencing Collington indicated, through his attorney, that he intended to challenge the presentence investigation recommendation that he be treated as a career offender. Collington's guideline range was 188 to 235 months, given his career offender status. If he had not been a career offender, his guideline range would have been in the 77 to 96 month range. When Perry learned that Collington intended to press his challenge to the career offender designation, he told Andrews that he would not file his 5K1.1 motion for a downward departure because he believed Collington's frivolous challenge to the career offender enhancement was a violation of the plea agreement. Collington and Andrews discussed this development and Collington decided to withdraw the career offender enhancement challenge. Andrews then argued for a greater downward departure than recommended by Perry and/or a variant sentence that would have been outside the advisory guidelines altogether. Prior to the sentencing hearing Andrews told Collington he thought he would receive a sentence between five and ten years. Perry's motion requested a 30% departure from the guidelines range, recognizing the substantial past assistance Collington had provided. The court granted the 5K1.1. motion filed by Perry, and in fact, departed to an even greater extent than Perry had requested. The court awarded a 36% departure, sentencing Collington to 120 months imprisonment.

At the time of the sentencing hearing all parties recognized that if Collington continued to cooperate with the prosecution there was a possibility that Perry would file a Rule 35 motion seeking a further reduction in the sentence. Judge Horby recognized that possibility at sentencing, although he cautioned Collington that " [i]f you're able to continue cooperating perhaps, no guarantee, but perhaps you'll get another motion from the Government that will reduce that farther." (Sentencing Tr. at 22-23, Page ID Nos. 251, 252, Doc. No. 122.)

Collington did remain in the local area while awaiting the trial of Frederick Gates. Collington was to be a witness against Gates. On the day of trial, September 23, 2009, Gates pled guilty. In the meantime Collington had filed an appeal on his conviction in what Assistant United States Attorney Perry deemed to be a violation of paragraph 4B of the plea agreement which provided that Collington waived his right to appeal any sentence that did not exceed 120 months.

After Gates changed his plea to guilty Prosecutor Perry had a conversation with Defense Attorney Andrews about Collington's post-sentencing cooperation. In Perry's view Collington had changed his story about some important aspects of the drug conspiracy and his value as a witness would have been seriously impacted. Nevertheless, Perry told Andrews that if Collington withdrew his appeal, Perry would then request permission from his superiors to file a Rule 35 motion. Collington withdrew his appeal and Perry then requested permission to file the Rule 35 motion. Paula Silsby, the United States Attorney for the District of Maine, denied the request and Collington was left without recourse.

There is no evidence that either Attorney Andrews or Collington was ever told that Assistant United States Attorney Perry needed the approval of his superiors prior to filing the Rule 35 motion or that it was unlikely that this approval would be forthcoming. I do note that the original plea agreement did have the approval signature of a supervising attorney, so the fact of approval by some supervisor could not have been a complete surprise. Perry did not believe that Collington provided significant assistance in terms of the Frederick Gates trial because his change of information during his post-sentence cooperation reduced his value as a witness. However, Collington stood ready and willing to testify at the Gates trial and would have done so had Gates not chosen to plead guilty. Collington felt that on the day of the sentencing hearing

Perry pressured him unnecessarily to abandon his objection to the career enhancement provision. He also believes that Perry did not act in accordance with the plea agreement when he failed to obtain permission to file a Rule 35(b) motion. Collington does acknowledge that he knew and understood that under the plea agreement he had waived his right to appeal any sentence that was 120-months or less in length and that his aborted appeal had been taken in violation of the plea agreement.

### Section 2255 Analysis

In his reply memorandum Collington argues three different theories related to the government's conduct vis-à-vis the plea agreement and sentencing and the possibility of moving for a Rule 35(b) reduction based on Collington's post-plea and sentencing cooperation. (Reply Mem. at 2.) He summarizes:

> Mr. Collington's motion presents three claims. The first claim is that the government breached the plea agreement when Mr. Perry presented Mr. Collington with an extremely difficult choice minutes before the sentencing hearing, i.e., whether to waive objections to the career offender enhancement knowing the government would not file the § 5K motion if he failed to do so. The second claim is that the government failed to honor its promise to file a Rule 35 motion despite the facts that Mr. Collington remained cooperative and withdrew his appeal. Mr. Collington's third and final claim is essentially a sub-set of the first two claims, i.e., Mr. Perry's acts and omissions alleged in the first two claims amount to prosecutorial misconduct.

(Id. at 4-5.)

During the evidentiary hearing counsel did not exactly withdraw his theories concerning a breach in the plea agreement stemming from the career offender issue, but he did not establish through Collington's testimony, or any other evidentiary showing, that this pre-sentencing caution concerning challenging the career offender status was animated by the bad faith of Assistant United States Attorney Perry.[2] There is no evidence in the record before me that there

---

[2] In his reply § 2255 memorandum counsel also conceded that this theory was an uphill battle:

was a non-frivolous challenge to the prior New York State conviction as a career offender predicate offense.[3] Whatever may have been the impetus behind Collington's potential challenge to the career offender enhancement, this § 2255 proceeding has not developed a record that would support any conclusion regarding the merits of such a challenge. The Revised Pre-sentence Investigation Report indicates apropos this conviction:

> 21. 7/07/03
> Age 20
> Attempted Robbery, 2nd Degree/Kings County
> Superior Court, Brooklyn, NY, Dkt.# 2003-40321
> 2/13/04: 1 Year 4A1.1(b)
> Records reflect that the defendant pled guilty to this felony charge on 2/13/04, and he received the sentence outlined above. No details of the offense are known. Records indicate the defendant was originally charged with Robbery 2nd Degree, Grand Larceny 4th Degree, Robbery 1st Degree, Robbery 3rd Degree, Conspiracy 4th Degree, Petit Larceny, Criminal Possession of Stolen Property, Menacing 3rd Degree and Harassment 2nd Degree. The defendant was represented by counsel in this case.

(Revised PSR ¶ 21.)

Rather, during the evidentiary hearing, Section 2255 counsel Clifford reasonably argued principally that the negotiations stemming from the withdrawal by Collington of his direct appeal

---

> Mr. Collington acknowledges that this first claim may be very difficult to establish, particularly in light of the fact that he was represented by counsel. This claim is essentially that the government breached the covenant of good faith and fair dealing. See e.g., *United States v. Doe*, 170 F.3d 223 (1st Cir. 1999) ("plea agreements, because they are contracts, impose on each party a duty of good faith and fair dealing", and citing cases holding that government's refusal to file § 5K1.1 motion violates plea agreement if attributable to bad faith). Here, the record and Mr. Collington's anticipated testimony could substantiate the requisite "bad faith" if the Court finds the government's "ultimatum" was inappropriately made at the last minute or that the government's refusal to file a § 5K motion unless Mr. Collington waived his objections to the career offender enhancement "was not rationally related to any legitimate government end". <u>Wade v. United States</u>, 504 U.S. 181 (1992).

(Reply Mem. at 5.)

[3] Collington's sentencing memorandum devoted eight pages to this challenge which made a legal argument that under the categorical approach "the definition of forcibly in New York is broader than the definition in the guidelines even though robbery in the first degree defines force in terms similar to the definition included in the sentencing guidelines." (Def.'s Sentencing Mem. at 8. (Doc. No. 74).) He further opined that attempted robbery in the 2nd degree was a Class D felony that carried a maximum "alternative definite" sentence of one year or less and therefore should not have counted as a predicate offense under the career offender guideline. (Id. at 9.)

7

and the prosecutor's indication that he would consider filing a Rule 35(b) motion only if this was done created a new 'contract of sorts' between the defendant and the United States which was breached when the Rule 35(b) motion never came to fruition.[4] Collington has no evidence that the prosecutor directly involved in this sequence of events did not in fact seek approval from United States Attorney Silsby; Section 2255 counsel argued instead that the prosecutor did not adequately inform Collington that he did not have the final say on whether the Rule 35 motion would be filed with the court. Although it was not necessarily its burden to do so in the context of a § 2255 proceeding, the United States did not present any evidence of what the prosecutor asked United States Attorney Silsby to do in terms of the percentage of recommended further reduction sought by Perry -- his affidavit indicates that he requested he "be authorized to seek a further, but small, reduction" (Perry Aff. ¶ 12) -- nor did the United States present any evidence of Silsby's reasons for denying this request by her assistant.[5] However, this ambiguity about what exactly went on between the Assistant United States Attorney Perry and United States Attorney Silsby is not determinative of this claim because, as the Assistant United States Attorney representing the United States in this § 2255 proceeding pointed out at the evidentiary hearing, these facts and the defense theory does not amount to a constitutional claim that is tenable in a 28 U.S.C. § 2255 proceeding.[6]

---

[4] Section 2255 counsel did acknowledge that there was a strong argument that when Collington filed his pro se notice of appeal all bets were off with respect to any legal tender that the original agreement has to this current dispute.

[5] In fact the United States is relying on rank hearsay in the Perry affidavit which states: "After considering the inconsistencies in Collington's accounts of the relevant events and the amount of the Government's original recommendation for a departure, the United States Attorney declined to authorize me to file a Rule 35 motion." (Id.) (emphasis added).

[6] There is certainly no claim that Collington's sentence itself is open to collateral attack. See cf., United States v. Addonizio, 442 U.S. 178, 190 (1979) (rejecting the use of 28 U.S.C. § 2255 to challenge a post-sentencing change in the policies of the United States Parole Commission that prolonged the defendant's actual period of imprisonment beyond what had been expected).

There is not a strong thread of case law governing claims relating to breaches of a post-sentencing agreement to cooperate when brought in the context of a § 2255 collateral challenge. However, there is a somewhat disjointed cluster of cases that address similarly postured collateral challenges. Two are particularly worthy of highlighting.

In <u>Boccio v. United States</u>, the District Court for the Middle District of Florida summarized and explained:

> Petitioner's third claim is that the Government breached a promise to file a Rule 35 Motion in exchange for Petitioner's dismissal of her pending appeal. This claim-which relates to an alleged promise by the Government made *after* Petitioner's sentencing-is not cognizable under § 2255.

Nos. 6:05-cv-179-Orl-19DAB, 6:02-cr-189-Orl-19DAB, 2006 WL 4761060, 4 (M.D.Fla. Oct. 20, 2006) (unpublished). A footnote observed:

> To the extent Petitioner's breach of promise claim is based upon statements made by the Government before sentencing, such claim is waived by the clear terms of the plea agreement which were reviewed with Petitioner during the change of plea hearing. (<u>See</u> <u>supra</u>, *Petitioner's Waiver of § 2255 Relief in Her Plea Agreement,* at 4-8). Indeed, the clarity and detail of the "substantial assistance" provision in Petitioner's plea agreement distinguishes this case from the case cited by Petitioner in her amended petition- <u>United States v. Benjamin</u>, 138 F.3d 1069 (6th Cir.1998).

<u>Id.</u> at 4 n.8. The Florida court further commented that even if a post-sentencing breach of promise claim were cognizable under § 2255, no evidence had been provided that the United States' failure to file a Rule 35 Motion was based on any constitutional infirmity.

And in <u>Mella v. United States</u>, the Southern District of New York proffered the following analysis of a very similarly situated § 2255 claim based on post-sentence cooperation agreements:

> Petitioner attempts to fit his claim into the statute [28 U.S.C. § 2255] by alleging that he was deprived of liberty without due process of law by entering into a plea agreement which was induced by a specific oral promise which the Government has failed to keep. See <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971)

9

> ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); <u>United States v. Knights</u>, 968 F.2d 1483, 1486 (2d Cir.1992). However, petitioner does not allege that the specific representation regarding a Rule 35(b) motion was a material term of the plea agreement, or that it induced him to enter into the agreement. Although petitioner claims that he "reasonably understood throughout this matter that his continued cooperation with the Government after the sentencing would lead to a Rule 35(b) motion being filed with this Court by the Government," his plea agreement does not mention such an arrangement, and at his plea allocution, petitioner unequivocally disclaimed the existence of any such side agreement:
>> THE COURT: Apart from this plea agreement and the Government's agreement to enter into a bail package with you, has anybody promised you anything in connection with this plea?
>> MELLA: No promises whatsoever.
>
> (Trans. of Proc. May 26, 1992, at 47.) A breach of a promise made by the Government after the plea agreement was entered into by petitioner could not logically be a breach of the plea agreement itself. <u>Cf. United States v. Ringling</u>, 988 F.2d 504, 507 (4th Cir.1993) (promise to make a Rule 35 motion made after defendant entered into plea agreement, was sentenced and committed to prison was "gratuitous and in no way a basis for the plea agreement").

94 Civ. 4210 (MGC), 92 Cr. 003 (MGC), 1995 WL 350926, 2 -3 (S.D.N.Y. June 9, 1995) (unpublished). The court concluded that petitioner's real claim, similar to Collington's, was that the government breached, not the plea agreement, but a separate promise of a Rule 35(b) motion which was made to secure his continued cooperation after sentencing. The court concluded that this sort of allegation is not a challenge to the constitutionality or legality of the underlying sentence and, therefore, under the Supreme Court's <u>United States v. Addonizio</u>, 442 U.S. 178 (1979) decision, the claim was not cognizable in a § 2255 proceeding.

Other cases, in addition to also being unpublished, are also a bit tentative about the prospects of a 28 U.S.C. § 2255 claim based on a failure to move for a post-sentencing Rule 35(b) reduction. <u>United States v. Taylor</u>, 385 Fed.Appx. 584, 586, 2010 WL 2776347 (7th Cir. 2010) (unpublished) acknowledges that a district court had 28 U.S.C. § 2255 subject-matter jurisdiction to address a defendant's challenge to the prosecution's failure to move for a Rule

10

35(b) reduction but concluded that, if characterized as a § 2255 motion, it was untimely. United States v. Gordon, 12 Fed.Appx. 672, 673-674, 2001 WL 314539 (10th Cir. Apr. 2, 2001) (unpublished) addressed as cognizable a 28 U.S.C. § 2255 claim based on the failure to file a Rule 35(b) motion but concluded that there was no breach of the plea agreement because such a motion was entirely within the discretion of the prosecution under the plea agreement in question. United States v. Edwards, No. 98-6300, 2000 WL 219754 (4th Cir. Feb. 25, 2000) (unpublished) suggests that there was a tenable 28 U.S.C. § 2255 claim based on a failure to file a Rule 35(b) motion stemming from an oral agreement after the signing of the plea agreement but did so in the context of the United States' stipulation that the agreement had been made and its concession that it was an oversight not to pursue a Rule 35(b) motion. That case was remanded for resentencing.

And in a case very similar to this current dispute given the terms of post-plea and sentencing negotiation in Collington's case, a Florida District Court judge in United States v. Smith, stressed: "Defendant's Plea Agreement expressly stated that the government <u>only agreed to consider whether defendant's cooperation amounted to substantial assistance</u>, and the decision would be vested in the government and could not be challenged by defendant. Defendant merely disputes the evaluation of the officers that his cooperation was not substantial. This does not show a breach of the Plea Agreement." No. 2:02-cr-72-FtM-29SPC, 2008 WL 558714, 6 (M.D.Fla. Feb. 25, 2008) (unpublished) (emphasis added). In Collington's case there is the added twist that he arguably breached the plea agreement by filing his direct appeal and that the negotiations that ensued were at best an entirely new agreement.

This is not an exhaustive review of the precedents relating to this rather unusual 28 U.S.C. § 2255 claim. However, I have carefully considered these precedents, and based on my

findings of fact after the evidentiary hearing, I am confident in recommending that the Court deny Collington 28 U.S.C. § 2255 relief. There was no breach of the original plea agreement as a consequence of the prosecutor's pre-sentencing caution as to the pressing of the career offender status challenge. There was no harm or foul in the way that the suggested 5K1.1 reduction played out which, even though the prosecutor recommended on a 30% reduction, ended up with this Court's 36 % reduction. Collington has willingly and knowingly withdrawn his ineffective assistance claims. Per the discussion above, the circumstance of Collington's negotiations with Assistant United States Attorney Perry vis-à-vis post-sentencing cooperation do not amount to a constitutional violation justifying relief in a 28 U.S.C. § 2255 proceeding, even if this court were inclined to align itself with those case which extend § 2255 jurisdiction to these sorts of disputes. Assistant United States Attorney Perry may not have been crystal clear on the limitations of his ability to forward the Rule 35(b) motion on Collington's behalf in the event of his cooperation, but this lack of clarity does not rise to the level of a due process violation in the context of an oral agreement that was reached after this Court rendered its judgments on Collington's guilty plea and sentence.

## CONCLUSION

Based on the findings of fact and the legal analysis above, I recommend that the Court deny Collington 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Collington files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 21, 2011